Anna Mary GREEN, Appellant,

v.

OILWELL, an unincorporated DIVISION OF UNITED STATES STEEL CORPORATION, a foreign corporation; Calco Instruments Inc., a corporation; and Calvin R. Howeth, Appellees.

Anna Mary GREEN, Appellant,

v.

Calvin R. HOWETH, Appellee.

Nos. 65399, 66039.

Supreme Court of Oklahoma.

Jan. 17, 1989.

Cooper, Hiltgen & Healy by B.J. Cooper, and William C. Devinney, Oklahoma City, for appellant.

Don Manners, Inc. by Michael J. Tullius, Oklahoma City, for appellee Calvin R. Howeth.

HODGES, Justice.

On September 1, 1967, Calco Instrument Repair, Inc. was incorporated under the laws of the State of Oklahoma for the purpose of selling and repairing oilfield instruments and machinery. Calvin R. Howeth (appellee or Howeth), his wife Mary F. Howeth and A.C. Chausse were named as the incorporators in the articles of incorporation. The company's name was changed to Calco Instruments, Inc. (Calco) on August 21, 1974, in an amended certificate of incorporation. At a meeting held

on July 7, 1975, Howeth certified that he was the president and sole shareholder of Calco and consented to the dissolution of said corporation pursuant to 18 O.S.1971 § 1.181 of the Business Corporation Act. Howeth then exchanged his shares of stock in Calco for all of the corporate assets. On July 25, 1975, the assets Howeth had received from Calco were sold to Baker Oil Tools, Inc., a California corporation, for $700,000 to be paid in five (5) equal, annual installments.

A statement of intent to dissolve by unanimous consent of shareholders of Calco was filed with the Secretary of State of Oklahoma on August 1, 1975, and Calco was issued a certificate of dissolution on August 29, 1975.

On September 10, 1975, Carl Green, the husband of Anna Mary Green (appellant), was killed in an explosion while working on an oil drilling rig. On September 8, 1977, appellant filed her wrongful death action, based on the theory of manufacturers' products liability against Oilwell, an unincorporated Division of U.S. Steel (Oilwell), Calco and Howeth. Appellant alleged her husband had died as a result of an explosion caused by a defective air valve manufactured by Calco prior to its dissolution and distributed by Oilwell. Howeth was named as co-defendant in this action because Calco had been issued its certificate of dissolution two weeks prior to the death of appellant's husband.

On May 21, 1984, a jury trial was held in the District Court of Oklahoma County and at the close of appellant's case the trial court sustained a demurrer to the evidence as to Howeth and ruled that any attempt to impose liability on this individual defendant must be made after obtaining a judgment against Calco. At the close of the trial the jury found Oilwell and Calco liable to appellant and awarded her $551,400 in damages and pre-judgment interest, for a total judgment of $1,110,823.47.

Appellant then entered into a partial settlement with Oilwell for $750,000, but specifically reserved all of her rights against Calco and Howeth. When appellant attempted to execute the remainder of the judgment against Calco, the Oklahoma County Sheriff returned the writ of execution because no property of the dissolved corporation could be found. Subsequently, appellant filed motions seeking to execute the judgment against Howeth. The district court granted these motions, and ordered Howeth to appear and answer as a witness in aid of execution of judgment on July 3, 1985. Howeth testified he received all of the assets of Calco in exchange for the return of his stock to Calco in July of 1975, and then sold these assets to Baker Oil Tools, Inc., the following day. When appellant inquired as to what use Howeth had made of the proceeds from the sale of Calco's assets, Howeth's objection to the foregoing question was presented to the district court for resolution. After hearing arguments of counsel, the district judge ordered both parties to submit briefs on whether Howeth could be held liable to appellant under the theory that Howeth is a constructive trustee of all the assets he received from Calco as to all creditors of the dissolved corporation.

A final hearing was held October 4, 1986, on Howeth's motions. The court below sustained Howeth's motions and dismissed the third party hearing in aid of execution. The district court made the following findings of fact and conclusions of law in its journal entry:

## FINDINGS OF FACT

"1. Plaintiff, Anna Mary Green, is a valid judgment creditor of Calco Instruments, Inc.

"2. The claim of plaintiff, Anna Mary Green, against Defendant, Calco Instruments, Inc. arose subsequent to the dissolution of said Calco Instruments, Inc., the transfer of the corporate assets to the principal shareholder, said Calvin R. Howeth, and the sale of corporate assets by said Calvin R. Howeth to Baker Oil Tools, Inc."

## CONCLUSIONS OF LAW

"1. A shareholder's liability for payments of a dissolved corporation's liabili-

ties from assets distributed to the shareholder by the corporation, under the constructive trust theory is limited to liabilities incurred prior to the corporate dissolution and distribution of the assets to the shareholder.

"2. Inquiry by Plaintiff into the receipt and disposition of the assets of Defendant, Calco Instruments, Inc., to Calvin R. Howeth and his subsequent disposition of those assets,. and execution by Plaintiff upon said assets or the proceeds received from the sale of said assets is prohibited."

Appellant then appealed from this order in Supreme Court Case No. 65,399.

On November 12, 1985, appellant filed a separate lawsuit against Howeth in case no. CJ–8–10128, reiterating her contention that Howeth, as officer, director and shareholder of Calco took its corporate assets in trust for the benefit of all creditors and that Howeth was liable to the extent of its assets of the corporation that he received at dissolution. In addition to the constructive trust theory of recovery, appellant's petition included the following three causes of action: First, Howeth had taken fraudulent steps in obtaining a certificate of dissolution for Calco and thereby violated 18 O.S.1971 § 1.176; second, liability should be imposed on Howeth for failing to make adequate provisions for payment of Calco's liabilities as required by 18 O.S.1971 § 1.194; finally, appellant reiterated that Howeth is a constructive trustee to the extent of its assets he received from Calco,

but claimed additional damages, alleging Howeth had received the Calco assets in a fraudulent manner.

The district court granted Howeth's motion for summary judgment and dismissed the case. Appellant appealed from this order in Supreme Court Case No. 66,039 which was subsequently consolidated with appellant's previous appeal and these two appeals are before this Court in the surviving Case No. 65,399.

The dispositive first impression issue presented in this consolidated case is whether a plaintiff may utilize the equitable "trust fund doctrine" in a manufacturers' products liability action accruing after the dissolution of a corporate manufacturer to satisfy a judgment against the corporation by holding the shareholders of the dissolved corporation liable to the extent of the assets received by them upon dissolution of the corporation. We answer in the affirmative.

In a manufacturers' products liability action the cause of action accrues at the time of the injury. *Kirkland v. General Motors Corporation,* 521 P.2d 1353, 1361 (Okla.1974). It is not disputed appellant's products liability action did not accrue until after Calco had dissolved. Howeth contends, therefore, Calco could not be sued under 18 O.S.1971 § 1.188 (repealed 1986), in effect at the time appellant's action accrued, because her action accrued after the dissolution of Calco.[1] Howeth then argues that because Calco could not be sued for a

---

1. 18 O.S.1971 § 1.188 (enacted in 1947 and repealed 1986) provided:

"Any domestic corporation which is dissolved by the expiration of its terms of existence, by forfeiture of existence by order of court, or otherwise, nevertheless shall continue to exist for the purpose of winding up its affairs, *prosecuting and defending actions by or against it,* and enabling it to collect and discharge obligations, dispose of and convey its property, and collect and divide its assets, but not for the purpose of continuing business except in so far as necessary for the winding up thereof. No action or proceeding to which a corporation is a party shall abate by the dissolution of such corporation or by reason of proceedings for dissolution and winding up thereof.

"Any assets inadvertently or otherwise omitted from the winding up shall continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation, and on realization shall be distributed accordingly." (Emphasis added). This section was amended and recodified in the new Oklahoma General Corporation Act enacted in 1986 and found at 18 O.S.Supp.1986 § 1099. Section 1099 now provides that dissolved corporations shall continue for at least three years after dissolution for the purpose of prosecuting and defending suits by or against them. Again, the Legislature makes no distinction regarding pre-dissolution and post-dissolution claims against the corporation.

We note many jurisdictions have patterned their statutes after the 1969 Model Bus.Corp. Act

post-dissolution claim under § 1.188 the equitable trust fund doctrine is inapplicable as against him as the former shareholder of the dissolved corporation. Even assuming, without deciding, that § 1.188 precludes actions accruing after dissolution against the dissolved corporation, the dispositive issue in the present case involves the availability of the equitable trust fund doctrine against the former shareholder.[2] It is thus unnecessary for this Court to determine whether § 1.188 bars post-dissolution claims against the corporation Calco.[3]

Oklahoma has recognized the judicial trust fund doctrine in the context of pre-dissolution claims against a corporation.[4] In *Wewoka, supra,* this Court held in paragraph three in the syllabus by the Court:

> "The court in the exercise of its equitable jurisdiction may administer the assets of a voluntarily dissolved corporation in the hands of its successors for distribution to the shareholders as a trust for the payment of a claim against the corporation without the claim having first been reduced to judgment against the corporation."

This equitable doctrine evolved in most jurisdictions prior to the adoption of the

survival statutes to militate against the harshness of the common law rule that upon dissolution the legal existence of a corporation is terminated. Under such rule the dissolved corporation could neither sue nor be sued and pending claims or proceedings were abated.[5]

Howeth urges this Court to reject the application of the doctrine to post-dissolution claims, as in the instant matter. He argues by analogy under the former Oklahoma Business Corporation Act a "judgment creditor" could sue a corporation and its directors if the debt or claim arose *prior* to the time of an unlawful distribution of corporate assets among its shareholders. 18 O.S.1971 §§ 1.146 and 1.147 (repealed 1986 and recodified at 18 O.S. Supp.1986 §§ 1051, 1053 and 1124). He asserts the Oklahoma Legislature only provided a statutory remedy against the corporation and directors for claims which accrue *prior* to the dissolution of the corporation and the distribution of the corporate assets to its shareholders. He thus contends because appellant's husband's death did not occur until *after* the corporate dissolution and distribution of the corporate assets, she would not be entitled to sue

§ 105 which allowed corporations, its officers, directors or *shareholders* to be sued for *pre-dissolution* claims only. *See e.g.* Ill.Ann.Stat., ch. 32, ¶ 12.80; Iowa Code Ann., § 496A.102; Tex. Bus.Corp. Act, art. 7.12. The 1984 Revised Model Bus.Corp. Act § 14.07 now provides for the commencement of post-dissolution claims within the first five years after published notice of dissolution.

**2.** We note a few courts have found that a *corporation* is liable for acts occurring prior to dissolution which cause injury subsequent to dissolution with the only time bar being that of the applicable statute of limitations according the survival statutes a liberal construction as they abrogate the common law rule which absolves a corporation of any liability once that corporation is dissolved. *See Oliver v. American Motors Corp.,* 616 F.Supp. 714 (E.D.Va.1985); *Naugher v. Fox River Tractor Co.,* 446 F.Supp. 1281 (N.D. Miss.1977); *North American Asbestos v. Superior Court,* 180 Cal.App.3d 902, 225 Cal.Rptr. 877 (1986). This approach is consistent with 25 O.S.1981 § 29 which provides: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberal-

ly construed with a view to effect their objects and to promote justice."

**3.** The Court of Appeals affirmed the trial court's judgment against Calco in favor of Mrs. Green in an unpublished opinion rendered December 9, 1986, in Case No. 62,788. The determination concerning Green's status as a judgment creditor of Calco is final, the law of the case and its relitigation in a collateral attack is barred by estoppel by judgment. *Wabaunsee v. Harris,* 610 P.2d 782, 785 (Okla.1980); *Lenz v. Young,* 307 P.2d 844 (Okla.1957).

**4.** *Gentry v. Jeffrey,* 389 P.2d 519 (Okla.1964); *Wewoka Petroleum Corporation v. Gilmore,* 319 P.2d 285 (Okla.1957).

**5.** H. Henn and J. Alexander, *Effect of Corporate Dissolution on Products Liability Claims,* 56 Corn.L.Rev. 865, 879–80 (1971); G. Wallach, *Products Liability: A Remedy in Search of A Defendant—The Effect of a Sale of Assets and Subsequent Dissolution on Product Dissatisfaction Claims,* 41 Mo.L.Rev. 323, 328 (1976).

either Calco or Howeth in his capacity as director under § 1.147; thus, should not be able to sue Howeth in his capacity as former shareholder under the equitable trust fund theory. We are not persuaded by this argument.

In 18 O.S.1971 § 1.194 (repealed 1986 and provision not recodified) the Legislature provided for the statutory liabilities of shareholders during the process of winding up the affairs of a domestic corporation without requiring the debts and liabilities to have accrued prior to corporate dissolution. However, such action could only be brought by the corporation, or its receivers, liquidators or trustees under § 1.194(d):

"c. After proceedings for the winding up and dissolution of a domestic corporation are begun, such corporation shall not:

.   .   .   .   .

"(2) Otherwise than by order of court, distribute any of the corporate property and assets without prior payment or adequate provision of any and all debts and liabilities of the corporation.

"d. Any dividends improperly paid or corporate property and assets improperly distributed to any shareholder or owner of shares in violation of subsection c hereof may be recovered *by the corporation, or its receivers, liquidators, or trustees,* together with interest thereon at six percent (6%) per annum until paid, from such shareholder or owner. Any of such shareholders or owners may be joined as defendants in the same action or brought in upon motion of any other defendant." (Emphasis added).

Howeth contends that inasmuch as no Oklahoma statute affords appellant a direct statutory remedy she has no viable cause of action in equity under the trust fund theory against Howeth. He relies on cases from other jurisdictions which have held, in the absence of statute, no cause of action accruing after dissolution exists against a corporation or its shareholders.[6] These cases have rejected the application of the equitable trust fund doctrine against a corporate shareholder of the dissolved corporation who had received corporate assets upon dissolution of the corporation in situations in which a plaintiff's products liability cause of action accrued after the corporate dissolution. The statutory schemes in those jurisdictions are distinguishable from that in Oklahoma.[7]

The Oklahoma Legislature did not provide creditors a direct statutory remedy against shareholders under the provisions of the former Business Corporation Act, regardless of when the claim accrued. Therefore, a creditor's only direct remedy against a former shareholder of a dissolved corporation to recover assets received upon dissolution is in equity under the trust fund theory. Oklahoma has no statutory equivalent to the equitable trust fund theory under the former Business Corporation Act or the new General Corporation Act, unlike the jurisdictions cited by Howeth.[8] We hence find our Legislature did not displace the equitable theory under the former Business Corporation Act as it is still very necessary to creditors to ameliorate the harsh result of the common law abatement rule. We also observe under 18 O.S.Supp. 1986 § 1124(A) of the new General Corporation Act the Legislature expressly states

---

**6.** *Gonzales v. Progressive Tool & Die Co.,* 463 F.Supp. 117 (E.D.N.Y.1979) (applying Massachusetts law the court commented on the application of the trust fund theory in cases in which the plaintiff shows it is equitable, however, it declined to decide the question until a fuller record is made); *Bishop v. Schield,* 293 F.Supp. 94 (N.D.Iowa 1968); *Blankenship v. Demmler Mfg. Co.,* 89 Ill.App.3d 569, 44 Ill.Dec. 787, 411 N.E.2d 1153 (1980); and *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547 (Tex.1981). *See also Pacific Scene, Inc. v. Penasquitos, Inc.,* 46 Cal.3d 407, 250 Cal.Rptr. 651, 758 P.2d 1182

(1988), which finds the California Corporations Code preempts the trust fund theory in its entirety previously asserted in equity against the former shareholders of dissolved corporations.

**7.** *See supra* note 1.

**8.** *See also Pacific Scene, Inc. v. Penasquitos, Inc.,* 46 Cal.3d 407, 250 Cal.Rptr. 651, 758 P.2d 1182 (1988).

a person may have an action in equity against the officers, directors or *shareholders* of any corporation. This provision indicates the Legislature's intent to continue to recognize traditional equitable theories such as the trust fund theory.

The viability of the doctrine against former shareholders is not inconsistent with the legislative intent to terminate the corporation as it does not prevent the final termination of the corporation. Although that finality in the winding up of corporate affairs is the principal reason for limiting creditor rights against a dissolved corporation, actions against former shareholders under the equitable doctrine does not prevent finality of the corporation. It is observed in a law review article on this subject:

"However, the need for promptness in regard to claims against the corporation does not necessarily exist for the shareholders. The relatively short grace period of the postponed abatement statutes has been created so that at the expiration of the grace period the corporation's existence, and its records, could be finally closed.... The shareholders, however, continue to function as individuals, and to enjoy the assets of the former corporation or the fruits of those assets. Allowing creditors to assert claims against them under the 'trust fund' theory, while creating uncertainty, does not prevent the final termination of an entity, as does the possibility of delayed claims against the dissolved corporation." G. Wallach, *supra* note 5, at 333.

Important policy considerations are also furthered by the retention of the equitable doctrine in cases accruing after corporate dissolution which involve defective products. Without the application of the theory against the former shareholders of a dissolved corporate manufacturer many injured plaintiffs would be left without a remedy because the assets are now in the hands of the former shareholders. We note that former shareholders are not subject to unending potential liability under the trust fund theory contrary to what it may appear at first glance. They are subject to the time bar provided under the applicable statutes of limitations governing the particular claim under the former Act.[9]

Our pronouncement furthers the legal protections for injured consumers. This Court is committed to the adoption of manufacturers' products liability principles and doctrines. *Kirkland v. General Motors Corporation*, 521 P.2d at 1362. We hence hold today in Oklahoma the equitable trust fund doctrine is available to a claimant injured by a defective product after the dissolution of a corporate manufacturer against the former shareholders of the dissolved corporation to the extent of the assets received by them. Provisions of the former Oklahoma Business Corporation Act did not contain language, expressly or implicitly, precluding products liability post-dissolution claims against the dissolved corporation's former shareholders under the trust fund theory. Without express legislation to the contrary,[10] this Court sees no paramount reason to deny claimants with products liability claims accruing after dissolution of the corporation the availability of the traditional equitable trust fund doctrine against the shareholders of the dissolved corporation inasmuch as it may be the only remedy in many instances where there is no successor cor-

---

**9.** Because under 18 O.S.Supp.1986 § 1124(B) of the new General Corporation Act no suit may be brought against a shareholder for a debt of the corporation until judgment is obtained against the corporation and under § 1099 of the new Act a suit against a dissolved corporation must be commenced within three years after dissolution, it would appear the equitable trust fund theory against a former shareholder would likewise be subject to the three year statute of limitations under the new Act.

**10.** 12 O.S.1981 § 2 provides in pertinent part: "The common law, as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma; ..."

poration that continues the business or no other sellers in the chain of distribution of the defective product.

We see no rational reason to differentiate between pre-dissolution and post-dissolution claims. To prevent the injured plaintiff here from following the corporate assets into the hands of the former shareholder when her husband's injury occurred only two weeks after dissolution is arbitrary and untenable. Appellant's suit against Calco and Howeth was brought within a reasonable time after Calco's dissolution, *i.e.,* two years after its dissolution. Also, Howeth continued to receive substantial payments from Baker Oil Tools, Inc., for the sale of Calco's assets for three years after appellant brought her action.

Therefore, we find the order of the district court in Case No. 65,399, in a third party witness hearing in aid of execution of judgment, prohibiting inquiry into and execution by appellant upon corporate assets received upon dissolution by Howeth from the judgment creditor, Calco, and dismissing the hearing in aid of execution, is reversed. The case is remanded for further proceedings not inconsistent with this opinion.

Further, the order of the district court in Case No. 66,039, granting summary judgment in favor of Howeth against appellant, is reversed and that case is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

HARGRAVE, C.J., and LAVENDER, DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J., concurs in result.

SIMMS, J., dissents.